## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### Austin Division

| | |
|---|---|
| ARTHUR BAISLEY,<br><br>    Plaintiff,<br><br>v.<br><br>INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS,<br><br>    Defendant. | Civil Case No. 1:19-cv-531<br><br><br>**COMPLAINT—CLASS ACTION—FOR DECLARATORY, MONETARY, AND INJUNCTIVE RELIEF** |

### INTRODUCTION

1.   This lawsuit seeks to enjoin a labor union from requiring its nonmembers to affirmatively opt-out of paying for union fees they have no legal obligation to pay. The Railway Labor Act and First Amendment protect the rights of airline employees to choose not to join the union or pay it union fees that are unrelated to collective bargaining, such as union spending on politics, organizing and other ideological activities ("nonchargeable"). Yet Defendant International Association of Machinists and Aerospace Workers' ("IAM") burdens the exercise of these rights by requiring nonmembers to pay the same amount that voluntary members pay in dues which are spent on not only collective bargaining, but on politics, organizing, and other ideological activities. It then forces nonmembers to opt-out in writing of union fees that are nonchargeable. Nonmembers who fail to submit an opt-out in writing are compelled to pay for and support IAM's nonchargeable activities.

2.   In *Knox v. SEIU, Local 1000*, the U.S. Supreme Court found that opt-out requirements burden the exercise of the right not to pay for nonchargeable spending. 567 U.S. 298, 312

(2012). On June 27, 2018, in *Janus v. AFSCME, Council 31*, the U.S. Supreme Court held that opt-out requirements violate the First Amendment because a waiver of rights "cannot be presumed." _ U.S. __, 138 S. Ct. 2448, 2465, 2486 (2018). Instead, unions must receive nonmembers' affirmative consent to charge them for its nonchargeable spending. *Id.*

3.   IAM's opt-out requirements violate the RLA by burdening the exercise of the right not to pay for a union's nonchargeable spending. Alternatively, if the RLA permits opt-out requirements, then the RLA violates the First Amendment. IAM's opt-out requirements also breach the duty of fair representation.

4.   Plaintiff Arthur Baisley is a ramp service employee for United Airlines and a nonmember of IAM. He seeks to represent a class of other nonunion employees whom IAM forced to opt-out in order to avoid paying the nonchargeable union fees that they had no legal obligation to pay.

## JURISDICTION AND VENUE

5.   Plaintiff's claims arise under the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, and the First Amendment to the U.S. Constitution. Thus, this Court has jurisdiction over this action according to 28 U.S.C. §§ 1331 (federal question) and 1337 (interstate commerce). According to 28 U.S.C. §§ 2201 and 2202, the Court may declare Plaintiff's rights. Venue is proper in this Court according to 28 U.S.C. § 1391 because Plaintiff's claims arose in this district.

## PARTIES

6.   Plaintiff Arthur Baisley is an "employee" of United Airlines within the meaning of RLA, 45 U.S.C. §§ 151, 181. United Airlines is a "carrier" within the meaning of RLA, 45 U.S.C. § 181.

7.   Defendant IAM is a "representative" within the meaning of 45 U.S.C. § 151, Sixth and is the exclusive bargaining representative for Plaintiff under 45 U.S.C. § 152, Ninth, despite his decision to reject membership in IAM.

## FACTS

8.   Defendant IAM is a labor union that exclusively represents a nation-wide craft/class of "fleet service employees" that work for United Airlines. Plaintiff Arthur Baisley falls within this craft/class because he works for United Airlines as a "Ramp Service Employee."

9.   Under the Railway Labor Act, IAM's status as the fleet service employees' exclusive representative means IAM has a legal right to demand that United Airlines negotiate only with it for their terms and conditions of employment, including their wages. 45 U.S.C. § 152; *Virginian. Ry. Co. v. System Fed'n No. 40*, 300 U.S. 515, 548 (1937). IAM's exclusive representative status forecloses United's ability to negotiate with IAM's nonmembers, i.e., employees who fall within the "craft/class" that IAM represents but who chose not to sign up for union membership. *Id.* As a result, the RLA forces nonmembers to accept IAM's representation and extinguishes their individual right to deal directly with their employer. *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 202 (1944); *c.f. N.L.R.B. v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967) ("The employee may disagree with many of the union decisions but is bound by them.").

10. The RLA also empowers exclusive representatives, like IAM, to maintain a "union security" agreement, which legally requires employers to terminate employees who fail to pay union fees ("forced fees"), including employees who are nonmembers of the union. 45 U.S.C. § 152, Eleventh. Thus, employees subject to a forced fees agreement made between their union and employer must pay union fees or be fired.

3

11. Yet unions spend large sums of money on politics and "'advocate political ideas, support political candidates, and advance national economic concepts which may or may not be of an employee's choice.'" *Machinists v. Street*, 367 U.S. 740, 747 (1961) (quoting *Hanson v. Union Pac. R. Co.*, 71 N.W.2d 526, 546 (Neb. 1955), *rev'd on other grounds by Ry. Emps.' Dep't v. Hanson,* 351 U.S. 225 (1956)). They also spend money on organizing, which is money "spent on employees outside" a nonmember's immediate craft/class of employees, and other ideological activities. *Ellis v. Ry. Clerks,* 466 U.S. 435, 452 (1984).

12. As a result, the U.S. Supreme Court has repeatedly recognized that forced fees threaten individuals' freedom of speech, association, and thought because it forces them to fund private organizations (unions) "with political aspects." *Street*, 367 U.S. at 747. And ultimately "political causes" which they may oppose. *Ellis*, 466 U.S. at 447 (quoting *Street*, 367 U.S. at 768).

13. To protect individual autonomy, the U.S. Supreme Court interprets the RLA and First Amendment as only allowing unions to compel nonmembers to pay union fees relating to collectively bargaining with their employer. Thus, a union may not charge nonmembers for its spending on nonchargeable activities. *Street*, 367 U.S. at 764.

14. IAM has a forced fees agreement with United Airlines, which requires all employees, including its nonmembers, like Baisley, to pay union dues-equivalent fees just to keep their job. If not preempted by the RLA, the Texas Right to Work law would void IAM's forced fees agreement in its entirety. Tex. Labor Code Ann. §101.051 *et seq.*

15. On information and belief, IAM spends millions of dollars a year on nonchargeable activities, including lobbying.

16. Even though nonmembers have no legal obligation to fund IAM's involvement in any nonchargeable activity, IAM automatically charges them fees for that nonchargeable spending. It

charges them the same dues rate as employees who have chosen to join IAM voluntarily. Only if nonmembers comply with the opt-out requirements in IAM's agency fee policy ("forced fees policy"), which is attached as Exhibit A, will their fees be reduced so that they do not pay for the union's spending on activities unrelated to collective bargaining.

17. According to IAM's forced fees policy, each nonmember must do the following to opt-out, and thereby, maintain their political and ideological autonomy, and not subsidize nonchargeable spending:

  i. Research and decipher IAM's opt-out requirements;

  ii. Plan and draft a written notice of objection;

  iii. Reveal to IAM in the objection notice the employee's full name and home address;

  iv. Include in the objection notice the employee's local union number, if known;

  v. Sign the objection notice;

  vi. Buy at least one envelope;

  vii. Pay for sufficient postage to send the objection notice to IAM;

  viii. Postmark the objection notice during the month of November;

  ix. Specifically state in the objection notice that the objection is "continuing in nature" or face having to file new objections every year;

  x. If the employee is currently a member of IAM, the IAM imposes the additional obligation of resigning from membership, and then submitting the objection notice within 30 days of resigning; if newly hired, a nonmember must submit an objection notice within 30 days of being subject to IAM's forced fees agreement.

18. Plaintiff Baisley is currently not a member of IAM and does not wish to associate with it. Baisley does not believe that he should have to do anything as a nonmember in order to exercise his statutory and First Amendment rights to refrain from paying union fees unrelated to IAM's spending on collective bargaining.

19. But to avoid paying the same rate as full union members and supporting and subsidizing IAM's nonchargeable spending, Baisley mailed a letter to IAM on or around November 23, 2018, which objected to paying for union fees unrelated to collective bargaining activities. Baisley paid $3.95 in postage to mail this objection letter.

20. Baisley received a letter from IAM dated November 28, 2018, which acknowledged his objection and promised to reduce his fees by the amounts that are not legally chargeable to nonmembers. But IAM's letter stated that he must send a new letter in November 2019 renewing his objection if he wishes to receive a reduction in the year 2020.

## CLASS ACTION ALLEGATIONS

21. This is brought as a class action according to Federal Rule of Civil Procedure 23(b)(1)(A) and (b)(2), and alternatively, 23(b)(3), by Plaintiff for himself and for all others similarly situated.

22. The class for all counts consists of all former (employed at some time since November 16, 2018), current, and future nonmember employees within the meaning of RLA, 45 U.S.C. §§151, 181 who are, have been, or will be represented by IAM and are, have been, or will be subject to IAM's opt-out requirements.

23. Upon information and belief, the numbers of persons in the classes are so numerous and scattered throughout the United States that joinder is impractical.

24. There are questions of law and fact common to all class members, including Plaintiff. This includes whether IAM's requirement that nonmembers opt-out of paying for its nonchargeable activities complies with the RLA, the First Amendment, and the duty of fair representation.

6

25. Plaintiff's claims are typical of the claims of other class members, who are subject to the same deprivations of their rights by IAM's opt-out requirements. IAM owes an identical duty with regard to these claims to Plaintiff and all other class members.

26. Plaintiff can adequately represent the interests of the class and has no conflict with other class members who are nonmembers of IAM.

27. Because IAM's compulsory fee practices and procedures apply equally to all in the class, the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for IAM.

28. The IAM has acted, and continues to act, to deprive Plaintiff and each class member of their statutory and constitutional rights on grounds generally applicable to all, making appropriate declaratory, injunctive, and other equitable relief appropriate for all class members.

29. Alternatively, the questions of law or fact raised in this complaint about the statutory and constitutional rights of nonmembers of IAM are common to the class members and predominate over any questions affecting only individual class members.

30. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that individual class members are deprived of the same statutory and constitutional rights by IAM's opt-out requirements, differing only in immaterial aspects of their factual situations. The limited amount of money at stake for each individual employee makes it burdensome for class members to maintain separate actions.

31. Plaintiff's attorneys are provided by a national charitable legal aid organization and are experienced in representing nonunion employees in federal litigation, having litigated many of the leading constitutional and statutory cases in this area of law, including class actions involving

forced union fee issues identical or similar to those raised here and related to the class. These attorneys are best able to represent the interests of the class and will fairly and adequately do so. *See Serna v. Transport Workers Union of Am.*, No. 3:13–CV–2469–N, 2014 WL 7721824, at *4 (N.D. Tex. Dec. 3, 2014) (finding that attorneys Milton L. Chappell and Jason Edward Winford have the "zeal and competence" to represent a class of nonmembers challenging a union's mandatory opt-out procedures).

## CLAIMS FOR RELIEF

### COUNT I
### (Compulsory Opt-Out Requirements Violate the Railway Labor Act)

32. The facts alleged above are incorporated here by reference.

33. The Railway Labor Act protects the rights of railway and airline employees to refuse to join a union and to otherwise disassociate from a union. These rights are in RLA, Section 2, Third, 45 U.S.C. § 152, which prohibits interfering, influencing or coercing employees in their choice of bargaining representatives, and RLA Section 2, Fourth, 45 U.S.C. § 152, which protects the right of employees to "join, organize, or assist in organizing" a union of their choice as well as the right to refrain from any of those activities.

34. Although Congress permitted unions to enter agreements with airlines that require employees to pay forced fees when it added RLA Section 2, 45 U.S.C. § 152, Eleventh, Congress did not alter the right of employees to refuse to pay union fees that are unrelated to a union's spending on collective bargaining activities, such as activities related to ideology, politics and other nonchargeable activities. 45 U.S.C. § 152; *Ellis* v. *Ry. Clerks,* 466 U.S. 435, 447-48 (1984); *Machinists v. Street*, 367 U.S. 740, 770 (1961).

35. The RLA prohibits union rules that burden employees' exercise of their RLA rights or that otherwise add requirements to the exercise of a RLA right that are "over and above" what the RLA requires. *Felter v. S. Pac. Co.*, 359 U.S. 326, 335 (1959).

36. Nothing in the RLA's text permits unions to require that employees affirmatively opt-out of paying forced fees that are unrelated to union spending on collective bargaining.

37. Opt-out requirements put a "burden" on employees' right to refrain from paying union fees that are unrelated to a union's spending on collective bargaining activities, including its spending on politics. *Knox v. SEIU, Local* 1000, 567 U.S. 298, 312 (2012). As the U.S. Supreme Court explained in *Knox*, a union's opt-out requirements create a risk that nonmembers' fees will go to "political and ideological ends with which they do not agree." *Id.* at 312. And these opt-out requirements irrationally conflict with the "probable preferences of most nonmembers," which is to refrain from paying fees they have no legal obligation to pay. *Id.*

38. In *Janus v. AFSCME, Council 31*, the Court held that nonmembers only pay for non-chargeable spending by waiving their rights not to pay those amounts and that a waiver of rights "cannot be presumed." _ U.S. __, 138 S. Ct. 2448, 2465, 2486 (2018) (citing *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938).

39. Therefore, opt-out requirements violate the RLA Section 2, Third, Fourth, and Eleventh, 45 U.S.C. §152, by burdening employees' right to exercise their right to refrain from paying union fees that they have no legal obligation to pay. Unions also lack legal authority to impose opt-out requirements because those requirements go "over and above" what the RLA requires for exercising the right not to pay fees unrelated to collective bargaining. *Felter*, 359 U.S. at 335.

40. The RLA also prohibits unions from imposing opt-out requirements because the U.S. Supreme Court interprets the RLA so that it does not offend the First Amendment. In *Janus*, the

U.S. Supreme Court expanded its criticism of union opt-out rules in *Knox* into a full-blown prohibition on opt-out requirements. 138 S. Ct. at 2465, 2486. The Court held that union opt-out requirements violate the First Amendment and that unions must use opt-in rules—i.e., receive affirmative consent from employees—before charging them money they have no legal obligation to pay. *Id.* at 2486. Now that the U.S. Supreme Court has clarified that the First Amendment prohibits unions from imposing opt-out requirements in *Janus*, the RLA cannot permit opt-out requirements without violating the First Amendment. *Ellis,* 466 U.S. at 447-48; *Street*, 367 U.S. at 750, 774; *Shea v. Machinists*, 154 F.3d 508, 513 (5th Cir. 1998) ("At the heart of the *Street* opinion was the concern over the employees' First Amendment rights under a union shop agreement.").

41. Although in *Street*, the U.S. Supreme Court suggested that RLA Section 2, Eleventh permits unions to impose opt-out requirements on nonmembers, 367 U.S. at 750, 774, the Court clarified in *Knox*, 567 U.S. at 312-13, and confirmed in *Janus* that *Street* is dicta, and that it is no longer good law, if it ever was. *Janus*, 138 S. Ct. at 2486.

42. Defendant IAM violated the RLA, Section 2, Third, Fourth, and Eleventh, 45 U.S.C. § 152, when it required Plaintiff Baisley and the class to affirmatively opt-out of paying union fees unrelated to its spending on collective bargaining, including its involvement in politics and other nonchargeable activities.

43. Defendant IAM caused Plaintiff Baisley and the class to suffer monetary and non-monetary harms when it violated the Railway Labor Act by requiring them to mail a letter to IAM objecting to paying fees unrelated to collective bargaining.

**COUNT II**
**(Alternative Violation - Compulsory Opt-Out Requirements Violate the First Amendment)**

44. The facts alleged above are incorporated here by reference.

45. The First Amendment to the U.S. Constitution protects the associational and free speech rights of individuals.

46. The First Amendment constrains a union's actions when it enforces a forced fees agreement that receives immunization from state right to work laws due to the RLA's preemption of those laws. *Shea v. Machinists*, 154 F.3d 508, 513 n.2 (5th Cir. 1998) ("The [U.S. Supreme] Court has found that there is sufficient state action to implicate the First Amendment in RLA cases because the RLA expressly states that it supersedes state law, and hence federal law is the authority through which private rights are lost.") (citing *Railway Employees' Dep't v. Hanson,* 351 U.S. 225 (1956)).

47. Unions subject to constitutional constraints violate the First Amendment when they require employees to opt-out of paying union fees that they have no legal obligation to pay. The only choice structure consistent with the First Amendment is one where unions seek employees' affirmative consent to paying fees they otherwise have no legal obligation to pay—i.e., an "opt-in" system. *Janus*, 138 S. Ct. 2448, 2486.

48. Although in *Machinists v. Street* the U.S. Supreme Court suggested that the First Amendment permits unions to impose opt-out requirements on nonmembers, 367 U.S. 740, 750, 774 (1961), the Court clarified in *Knox v. SEIU, Local 1000*, 567 U.S. 298, 312-13 (2012), and confirmed in *Janus* that *Street* is dicta and no longer, if it ever was, good law. *Janus*, 138 S. Ct. at 2448, 2486.

49. Thus, if the RLA, 45 U.S.C. § 152, Eleventh, is construed to allow unions to impose opt-out requirements, then the statute as construed violates employees' First Amendment free speech and association rights.

50. Defendant IAM's forced fees agreement with United Airlines was made based on the RLA authorizing unions and employers to enter those types of agreements. Thus, the First Amendment constrains any requirements that IAM imposes on employees when it maintains and enforces a forced fees agreement.

51. Defendant IAM violated the First Amendment free speech and associational rights of Plaintiff Baisley and the class when it forced them to affirmatively opt-out of paying union fees unrelated to its spending on collective bargaining. *Janus*, 138 S. Ct. at 2448, 2486.

52. Defendant IAM caused Plaintiff Baisley and the class to suffer monetary and non-monetary harms when it violated the First Amendment by imposing the opt-out requirements on them.

### COUNT III
### (Compulsory Opt-Out Requirements Breach the Duty of Fair Representation)

53. The facts alleged above are incorporated here by reference.

54. Under the RLA, a union acting as the exclusive representative of a craft/class of employees owes a fiduciary duty of fair representation to all the employees that it represents, members and nonmembers alike. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65 (1991). That duty is "akin to the duty owed by other fiduciaries to their beneficiaries," such as the "duty a trustee owes to trust beneficiaries," or the duty an "attorney" owes to a "client." *Id.* at 74.

55. "[A] union breaches its duty of fair representation if its actions are either "'arbitrary, discriminatory, or in bad faith.'" *Id.* at 67 (quoting *Vaca v Sipes*, 386 U.S. 171, 190 (1967)).

56. Unions breach the duty of fair representation when they impose burdensome and arbitrary requirements for employees to exercise their statutory or constitutional rights. *Shea v. Machinists*, 154 F.3d 508, 515 (1998).

57. IAM owed a duty of fair representation to Plaintiff Baisley and the class.

58. IAM breached that duty when it acted arbitrarily by requiring Plaintiff Baisley and the class to affirmatively object ("opt-out") to paying union fees that they had no legal obligation to pay. These opt-out requirements arbitrarily burden the opportunity of Plaintiff Baisley and the class to freely exercise their right not to pay union fees unrelated to collective bargaining. *See Knox v. SEIU, Local 1000*, 567 U.S. 298, 312 (2012).

59. Although in *Machinists v. Street*, the U.S. Supreme Court suggested that the First Amendment permits unions to impose opt-out requirements on nonmembers, 367 U.S. 740, 750, 774 (1961), the Court clarified in *Knox v. SEIU, Local 1000*, 567 U.S. 298, 312-13 (2012), and confirmed in *Janus* that *Street* is dicta and no longer, if it ever was, good law. *Janus*, 138 S. Ct. at 2448, 2486.

60.  IAM's opt-out requirements caused Plaintiff Baisley and the class to suffer monetary and non-monetary harms.

## PRAYER FOR RELIEF

Plaintiff Baisley, for himself and the class, asks that this Court:

61. Enter an order, as soon as practical, certifying this case as a class action, appointing Plaintiff Baisley as class representative, and appointing Attorneys Chappell, Jennings, Watkins, and Winford, as class counsel.

62. Declare that union requirements for an employee to object (opt-out) to paying union fees unrelated to union spending on collective bargaining activities violates the RLA and that the

RLA requires unions to receive employees' affirmative consent before it charges them for fees unrelated to collective bargaining. In the alternative, declare that the RLA's authorization of opt-out requirements violates the First Amendment. Declare that a union breaches the duty of fair representation by imposing opt-out requirements.

63. Declare that the opt-out requirements in IAM's forced fees policy violate the RLA. In the alternative, declare that the opt-out requirements in IAM's forced fees policy violate the First Amendment. Declare that IAM breached the duty of fair representation by maintaining and enforcing the opt-out requirements in its forced fees policy.

64. Grant equitable relief by permanently enjoining Defendant IAM from charging nonmembers for anything more than their pro rata share of the union's collective bargaining spending unless they affirmatively consent (opt-in) to support IAM's political, ideological and other non-bargaining spending.

65. Grant equitable relief by requiring IAM to remove any opt-out requirements from its forced fees policies.

66. Grant a permanent injunction mandating that Defendant IAM inform all employees, within RLA bargaining units for which it is the exclusive bargaining representative, of the final Order of this Court.

67. Award Plaintiff and the class damages, compensatory and nominal, for all of the monetary loss they suffered as the result of IAM's illegal opt-out requirements.

68. Grant further relief as the Court finds necessary and proper.

69. Retain jurisdiction of this action for a reasonable period after entering a final judgment to ensure that Defendant IAM complies with the Orders of this Court.

Dated: May 16, 2019                    Respectfully submitted,

                                       /s/ Jason E. Winford
                                       Jason E. Winford
                                       Texas Bar No. 00788693
                                       *jwinford@jenkinswatkins.com*
                                       David E. Watkins
                                       Texas Bar No. 20922000
                                       *dwatkins@jenkinswatkins.com*
                                       JENKINS & WATKINS, P.C.
                                       4300 MacArthur Ave., Suite 165
                                       Dallas, Texas 75209-6524
                                       Tel: 214-378-6675
                                       Fax: 214-378-6680


                                       /s/ Jeffrey D. Jennings ("with permission")
                                       Jeffrey D. Jennings
                                       *(application for admission to be filed)*
                                       Virginia Bar No. 87667
                                       *jdj@nrtw.org*
                                       Milton L. Chappell
                                       *(application for admission to be filed)*
                                       District of Columbia Bar No. 936153
                                       *mlc@nrtw.org*
                                         c/o National Right to Work Legal
                                       Defense Foundation, Inc.
                                       8001 Braddock Road, Suite 600
                                       Springfield, Virginia 22160
                                       Tel: 703-321-8510
                                       Fax: 703-321-9319

                                       *Attorneys for Plaintiff and Proposed Class*